UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| CENTER CAPITAL CORPORATION,<br><br>            Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>            Defendant. | Case No. 1:09-cv-471-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This matter involves a dispute between a loss payee under an insurance policy and an insurer concerning the appropriate measure of damage to a private aircraft. Plaintiff Center Capital Corporation ("Center Capital"), the loss payee under the insurance policy insuring the aircraft, contends that in addition to the cost to repair the aircraft, it is entitled to compensation for the diminution in value of the aircraft due to the physical damage incurred by the aircraft in an accident. Defendant National Union Fire Insurance Company of Pittsburgh, P.A. ("National"), disagrees, arguing that the language of its insurance policy is unambiguous and does not require payment of loss or damages beyond the cost to repair the aircraft. Center Capital filed a Motion for Summary Judgment on

**MEMORANDUM DECISION AND ORDER - 1**

June 11, 2010, the Court conducted a telephonic hearing on August 10, 2010, and the matter is now ripe for review.

After reviewing the briefs, relevant authorities, and considering the parties' arguments, the Court concludes that the insurance policy is ambiguous and is reasonably subject to an interpretation allowing for coverage for diminution in value. Plaintiff's motion will therefore be granted. However, the Court makes no finding, as explained below, that the aircraft has suffered or will suffer from a diminution in value after it is repaired.

## FACTS

National does not dispute the facts set forth by Center Capital in its statement of facts. (Response at 1, Dkt. 25.) Center Capital extended a loan to McCormick Enterprises, Inc., an Idaho corporation,[1] for the purchase of a 2005 Columbia Lancair Company LC41-550FG airplane (the "Aircraft"). In consideration for extending financing, McCormick granted Center Capital a first priority purchase money security interest in the Aircraft. Center Capital perfected its security interest by filing the requisite paperwork with the Federal Aviation Administration.

The loan agreement required McCormick to obtain insurance on the Aircraft naming Center Capital as the loss payee. McCormick obtained insurance from National

---

[1] McCormick is not a party to this lawsuit. However, Center Capital filed a lawsuit against McCormick, Case No. 1:09-cv-130-CWD, for breach of contract to recover damages under its loan agreement. Center Capital filed a motion for summary judgment in that case, which was unopposed, and judgment in favor of Center Capital was entered on April 2, 2010. As a result of that lawsuit, Center Capital repossessed the Aircraft.

**MEMORANDUM DECISION AND ORDER - 2**

and named Center Capital as the loss payee under the policy. On July 6, 2008, during taxiing, the Aircraft suffered an accident and incurred damage to its front landing gear, front wheel and wheel mount, left landing gear, wing, nose, and engine. (Compl.¶ 14, 15, Dkt. 1.)

National obtained an estimate of $89,921.02 to repair the damage to the Aircraft. (Compl. ¶ 20, Dkt. 1.) Center Capital, however, disagrees that the sum is adequate under the terms of the policy to compensate it fully for its loss. Center Capital filed suit against National seeking a declaratory judgment from the Court that the insurance policy entitles it to compensation for the "diminution in value that exceeds the cost of mere repair." (Compl.¶ 22, Dkt. 1.) The controversy, therefore, centers around interpretation of the insurance policy.

National agrees that the copy of the insurance policy (the "Policy") attached to the Complaint as Exhibit E is a true and correct copy of the Policy, and both parties agree the policy language dictates the outcome of this case. (Response at 2 Dkt. 25.)

The Policy states that National will provide coverage for the following:

> 3.  INSURANCE FOR PHYSICAL DAMAGE TO
>     YOUR AIRCRAFT
>     COVERAGE C - Aircraft physical damage
>     We will pay for physical damage to your aircraft.

The policy excludes coverage under Coverage C for "depreciation, or damages for loss of use." Under Part Three, describing the limits of the insurer's liability, Coverage C is further explained as follows:

**MEMORANDUM DECISION AND ORDER - 3**

> COVERAGE C - The most we will pay for physical damage to your aircraft is the lesser of:
> 1. its Agreed Value if it is a total loss; or,
> 2. the costs to repair or replace damage with materials of like kind and quality . . . .

Under Part Four, describing the Conditions of Insurance, the Policy states:

> 3. LOSS TO YOUR AIRCRAFT
> a) OUR SETTLEMENT OPTIONS
> On a covered loss, other than a total loss, to your aircraft, we can:
> i) pay you, or
> ii) repair or replace damage with parts of like kind and quality. . . .
>
> * * *
>
> 4. APPRAISAL OF LOSS
> If you disagree with us on the amount of loss to your aircraft, each of us upon written notice to the other, will hire at its own expense an independent aircraft appraiser. . . .

Finally, in the definitions section, "Loss" is defined as "physical damage," while "Physical Damage" is in turn defined as "direct and accidental physical loss of or damage to property (also called loss). Excluded are depreciation, or any damages for loss of use." A "total loss" occurs when "the cost of repairing the aircraft when added to its salvage value before repairs equals or exceeds its agreed value. Disappearance, or theft of the entire aircraft, is a total loss."

Although the Aircraft has not been repaired, the parties are asking the Court for a determination before repairs are made that presumes, without evidence in the record, that the Aircraft's value will be less than before the accident once repairs are made. Also, the parties disagree about the cost of repair. National's position is that the diminution in

value, if any, is not part of a "covered loss," while Center Capital's position is that the policy is ambiguous and may provide for coverage for the diminution in value of the Aircraft.

## ANALYSIS

**1. Applicable Law**

    **A. Motion for Summary Judgment Standard**

Motions for summary judgment are governed by Fed. R. Civ. P. 56(c)(2), which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

A moving party may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

**MEMORANDUM DECISION AND ORDER - 5**

*Id.* at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981). The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment, the non-moving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

**B. Substantive Law Applicable to Interpretation of Insurance Contracts**

Insurance policies are contracts between the insurer and the insured. *Mortensen v. Stewart Title Guar. Co.*, 2010 WL 2605798 *3 (Idaho 2010) (citing *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008)). Whether an insurance policy is ambiguous is a question of law over which the court exercises free review. *Armstrong v.*

*Farmers Ins. Co. of Idaho*, 205 P.3d 1203, 1205 (Idaho 2009) (citing *Purvis v. Progressive Cas. Ins. Co.*, 127 P.3d 116, 119 (Idaho 2005)) (citation omitted). If the Court finds the policy language to be unambiguous, the Court is to construe the policy as written, "and the Court by construction cannot create a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id*. "Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Id.* (quoting *Howard v. Ore. Mut. Ins. Co.*, 46 P.3d 510, 513 (Idaho 2002)). Where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *Id.* at 1206 (citing *Hall*, 179 P.3d at 281).

In determining whether a particular provision is ambiguous, the provision must be read within the context in which it occurs in the policy. *Armstrong*, 205 P.3d at 1206 (citing *Purvis*, 127 P.3d at 119). An insurance policy provision is ambiguous if "it is reasonably subject to conflicting interpretations." *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997). If an ambiguity is found, and because insurance contracts are adhesion contracts that are not typically subject to negotiation between the parties, any ambiguity that exists in the contract is construed most strongly against the insurer and in favor of the insured. *Armstrong*, 205 P.3d at 1206 (citing *Arreguin v. Farmers Ins. Co.*, 180 P.3d 498, 500 (Idaho 2008)). The Court also is to construe insurance contracts "in a

manner which will provide full coverage for the indicated risks rather than to narrow its protection." *Smith v. O/P Transp.*, 918 P.2d 281, 284 (Idaho 1996)."The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500.

Therefore, the issue is whether National used language clearly restricting its obligation to pay for the cost of repair, and not the diminution in value to the Aircraft, under the terms of the insurance policy.

## 2. Arguments of the Parties

Center Capital believes the Policy is ambiguous and points to several policy provisions in support of its contentions. First, concentrating on the phrase "like kind and quality," Center Capital contends that the phrase subjects the preceding phrase requiring National to pay for "physical damage to" the Aircraft to a conflicting interpretation, and therefore opens the door to provision of coverage for the aircraft's diminution in value as a result of the accident. Second, Center Capital points out that the exclusions section includes an exclusion for loss such as depreciation, but does not specifically exclude diminution in value. Third, Center Capital contends that the Settlement Options provision includes an option other than repairs under section (a)(i), which section allows National to simply pay the insured rather than undertake repairs. But the provision does not specify how the payment amount will be determined. Immediately following the Settlement Options provision is a provision for conducting an appraisal, which Center Capital argues implies that the provision to "pay" the insured means National will "pay for the amount of

**MEMORANDUM DECISION AND ORDER - 8**

loss," which could encompass diminution in value.

Finally, to be made whole, Center Capital argues it is not enough to merely repair the aircraft, because after repairs, the aircraft is no longer the same "quality" as before the accident. As there is no Idaho case law directly discussing the issue,[2] Center Capital has cited a host of decisions from other jurisdictions to support its argument that the insurance policy is ambiguous and therefore would include coverage for the Aircraft's diminution in value.

National contends its policy is not ambiguous and that a reasonable interpretation of the policy language as a whole does not support Center Capital's interpretation. The Policy restricts payment to "physical damage," and National argues no reasonable interpretation would stretch the meaning of "physical damage" to include a subjective component such as diminution in value. All the Policy will cover is the "cost to repair or replace damage," which National argues supports its interpretation that diminution in value is not a covered loss. National cites several decisions from other jurisdictions as well, contending that the majority of courts have rejected the notion that an obligation to provide replacement parts of like kind and quality somehow includes payment for the diminution in value, and distinguishes the various cases Center Capital cited in its brief.

**3. The Policy is Ambiguous**

When determining whether an insurance policy is ambiguous, the Court must ask

---

[2] Both parties agree that, under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), the Court must apply Idaho state law to this diversity case. (Pl.'s Mem. at 8, Dkt. 24-2; Def.'s Mem. at 7, Dkt. 25.)

**MEMORANDUM DECISION AND ORDER - 9**

"whether the policy is reasonably subject to conflicting interpretation," *Arreguin*, 180 P.3d at 500, and read the supposed ambiguous provision within the context of the policy, *Armstrong*, 205 P.3d at 1206. "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500.

The Court finds the Policy, when taken as a whole, is ambiguous. Coverage C providing for National's limitation of liability states that "the most we will pay for physical damage to your aircraft is the lesser of" a choice between its Agreed Value, if the Aircraft is considered a total loss, or the "costs to repair or replace damage with materials of like kind and quality." "Physical damage" in turn is defined as "direct and accidental physical loss of or damage to property (also called loss). Excluded are depreciation, or any damages for loss of use."

The word "damage," and the measure of damage, can have multiple meanings, and one generally accepted measure of damage to property is its diminution in value due to injury. *See, e.g., Gilbert v. Tony Russell Const.*, 772 P.2d 242, 245–46 (Idaho Ct. App. 1989) (discussing the measure of damage under a breach of contract as the loss-in-value to the injured party's property). "Physical damage" is defined generally under the Policy as "damage to property," and the definition is immediately followed by "exclusions" to the type of damage that the Policy will cover. Although the definition of "physical damage" excludes depreciation and damages for loss of use, the definition does not expressly exclude diminution in value even though diminution in value is an accepted type of damage that is measurable and subject to replacement by compensation. The

**MEMORANDUM DECISION AND ORDER - 10**

Policy could have, but did not, expressly exclude diminution in value from the definition of physical damage, while it did expressly exclude other types of loss from the definition of physical damage.

Although National argued that damage, as modified by the adjective "physical," unambiguously excludes subjective damage such as diminution in value, the definitions section injects the phrase with ambiguity. "Physical damage" is given a broad definition as "damage to property," which term could include diminution in value. In turn, the definition of physical damage includes "exclusions," but diminution in value is not one of the types of damage excluded. The circular reference in the definition of "physical damage" to the definition of "loss," which in turn is defined as "physical damage," does nothing to restrict the definition of "physical damage," which is defined simply as "damage to property."

In the section describing National's settlement options, the ambiguity is carried over because National is given three options for payment. It can "pay" its insured, "repair or replace damage with parts of like kind and quality," or if the insured elects to undertake repairs and actually does so, National can apply a different payment scheme. The Policy fails to articulate the standard by which the payment to its insured—option (3)(a)(i)— is quantified.

National argued that the "payment to its insured" provision should be measured by the cost to repair, but to do so renders option (3)(a)(ii), which permits National the alternative option to "repair or replace damage with parts of like kind and quality,"

**MEMORANDUM DECISION AND ORDER - 11**

redundant. There would be no need for National to include a "repair" option if the "payment" option is quantified by the repairs. The two provisions, therefore, must have some independent meaning, creating an ambiguity. In looking at the Policy language, if the "pay" option in (3)(a)(i) is to have independent meaning as a choice National could make, the answers lie in the Policy definitions. National could "pay" for the "loss," which "loss" is defined as "physical damage," which in turn is defined as "damage to property" without an exclusion for diminution in value, as explained above. Therefore, the Policy's Settlement Options section can reasonably be read to mean National may, as one of its options, "pay" its insured for all loss, which loss does not exclude diminution in value.

In addition, despite having three alternative settlement options, no attempt is made to reconcile the three settlement options with the provision in "Coverage C," which provides that the "most [National] will pay" is the "lesser of" the aircraft's Agreed Value, stated in the Policy as $585,000, and "the cost to repair or replace damage. . . ." Yet the "cost to repair or replace damage" is included as only one of the three settlement options. The Coverage C limitation therefore fails to account for the fact that settlement option three, which permits National to reimburse its insured for the cost of "repairs by you," could actually be less than the "cost of repairs," which is settlement option two. It is conceivable that the "cost of repairs" could be measured by the cost to repair rendered by a third party, which costs could be more expensive than the cost of repairs undertaken by the insured.

A case involving a similar choice of payment options resulted in a finding of

**MEMORANDUM DECISION AND ORDER - 12**

ambiguity, and provides persuasive authority for the Court's interpretation of the Policy in this matter. In *Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kansas*, 807 P.2d 1319, 1323–24 (Kan. Ct. App. 1991), Dodson sustained damages to its aircraft after a hail storm. It obtained two damage estimates for the repairs to the damaged aircraft hull, one in the amount of $89,000, and the other in the amount of $151,000. Before receiving a settlement offer from the insurer, Dodson obtained a "bottom-of-the-line repair" for $10,000. The jury, acting upon instructions from the court limiting the damages to the actual cost of repair, found that the insured was entitled to damages of $10,000.

On appeal, the Kansas court held that the proper measure of damages in a case when repairs failed to restore the property to its former condition and value was the value of the property immediately before the damage less the value immediately after repairs were made, plus the reasonable cost of the repairs and less any deductible. *Dodson Aviation, Inc.*, 807 P2d at 1322. Similar to this case, the insurer had three settlement options: it could repair or replace the aircraft; pay for the loss in money; or reimburse the insured for the actual cost of repairs obtained by the insured.

The court found the three settlement options imparted an ambiguity, because a reasonable person would not distinguish that the measure of damages would be different depending upon who repaired the plane or the extent of the repairs made. *Dodson*, 807 P.2d at 1324. The court therefore concluded that an ambiguity existed in the policy, and that the trial court erred when it excluded evidence of the fair market value of the plane before and after the hail damage and repairs and the extent of any loss in value as a

**MEMORANDUM DECISION AND ORDER - 13**

measure of damage under the contract. *Id.* The Court finds the reasoning in *Dodson* persuasive where, as in this case, three similar alternative settlement options exist, and National makes no attempt to distinguish the differences between the three choices.

However, in finding that an ambiguity exists in the Policy, the Court does not find that Center Capital is entitled per se to damages for the Aircraft's diminution in value, or even that diminution in value exists in this case. The Aircraft in this case has not been repaired. The parties have not presented any evidence at this time that, once the $89,000 (or more) in repairs are made, the Aircraft actually will be of lesser value than before the accident.

The case of *Defraites v. State Farm Mut. Auto. Ins. Co.*, 864 So.3d 254, 260 (La. App. 5th Cir. 2004), is instructive in this instance. In that case, an automobile was damaged in an accident, and the plaintiff sued alleging damages for the cost of repairs and its diminished value. Although the insurer paid for the cost to repair, it did not pay for the vehicle's diminished value. The court explained that there should be no presumption of diminished value simply because the vehicle was involved in an accident, but rather proof of such diminished value must be made before such money damages would be recoverable. *Defraites*, 864 So.3d at 261.

Although *Defraites* was decided under Louisiana law, the Court finds it instructive here, and agrees with its premise that diminution in value is not presumed per se once a vehicle is involved in an accident. Provided the insurance policy provides for or does not exclude recovery for diminution in value, money damages for diminution in value are

**MEMORANDUM DECISION AND ORDER - 14**

recoverable if proven. In this case, no such proof has been offered, and the Court does not presume the Aircraft will suffer diminution in value once the repairs are made to it.

## CONCLUSION

The Court finds that the Policy language does not clearly and unambiguously limit National's liability to the cost to repair or replace visible, physical damage. Instead, the Policy is reasonably subject to conflicting interpretations as to the measure of loss because of the three settlement options and the definition of "loss," defined as "physical damage," which in turn is broadly defined as "damage" and does not expressly exclude damage for diminution in value. Center Capital's Motion for Summary Judgment is therefore granted to the extent that it seeks a declaration that the Policy is ambiguous and reasonably can be interpreted as including coverage for diminution in value.

However, Center Capital's Motion for Summary Judgement asks for more than a declaration that the Policy covers diminution in value. Center Capital seeks a declaration that it is "entitled to recover" such damages. As explained above, provided Center Capital proves the Aircraft has suffered diminution in value once the repairs are made, the Court does not presume that such damages exist now or will exist in the future after the Aircraft is repaired. Therefore, to the extent Center Capital seeks a declaration that it is "entitled" to recover damages for the Aircraft's diminution in value, its motion is denied absent further proof of such damages.

Because of the Court's ruling, not all of the issues in the Complaint appear to be resolved by Center Capital's motion. The Court will, therefore, set this matter for a

**MEMORANDUM DECISION AND ORDER - 15**

scheduling conference to establish additional case management deadlines.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Summary Judgment (Dkt. 24) is **GRANTED IN PART AND DENIED IN PART** consistent with the Court's opinion expressed herein.

2) The parties are ordered to file Litigation Plans or a joint Litigation Plan on or before **October 20, 2010**. A notice of hearing will be forthcoming.

DATED: October 5, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge